O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: AMBER HOTEL CORPORATION<br>DEBTOR,<br>James J. Little,<br>Appellant,<br>v.<br>Stephen K. Post & Amber Hotel Corporation<br>Appellees. | Case No. CV 14-00575-VAP<br>USBC Case No. 1:13-BK-11804-AA<br>ADVERSARY Case No. N/A<br>**ORDER AFFIRMING THE JUDGMENT OF THE BANKRUPTCY COURT** |

Appellant James J. Little moved to disqualify Lewis Landau, Appellee Stephen Post's attorney in the underlying bankruptcy of Post's Amber Hotel Corporation ("Amber"). The bankruptcy court denied Little's motion, and Little appeals. The bankruptcy court's ruling is AFFIRMED.

**I. BACKGROUND**

It was a spring night in 2008. Frank Martini had his driver bring him to an office in Malibu. He went in. The office looked new; not yet lived-in. Stephen Post met Martini at the office. Post opened a litigation bag and removed one hundred thousand dollars in cash. He gave it to Martini. Martini did not consider the space consumed by that much money, and had no way to carry it home. Martini asked Post for his litigation bag. Post gave it to him. They parted. (ER 23–25.)

At least, that is what Martini testified. Previously, Little defended Martini's interests in litigation against Amber – and Little won a judgment in Martini's favor, including attorney's fees. But before he could collect, Post allegedly paid Martini to settle the case behind Little's back – the litigation bag full of money – and thereby deprived Little of his fee award. (See ER 13, 29–31.) Little sued Amber (and others) for this and won a judgment, but Post threatened to seek bankruptcy protection for Amber unless Little settled for less than the amount he was owed. (ER 13–14.)

Little wanted to know what his options were. In the spring of 2011, working with Jeffrey Helfer, a financial advisor (and also a licensed attorney), Little got in touch with Lewis Landau, a bankruptcy lawyer. (See ER

14.) The depth of the discussions between Little, Helfer, and Landau is a subject of dispute between the parties. For now, it suffices to say that they consisted of an approximately half-hour long telephone call and the exchange of a few terse e-mail messages – attached to one of which was a draft bankruptcy filing given to Little by Amber's counsel, and to another, a copy of a state court judgment against Amber. (See ER 35–40, 94–98, 105–06.) The exchange contained a message from Landau reminding Little and Helfer that Landau had "not yet agreed to take on any responsibility for this matter and you should proceed in whatever manner you deem best unless and until we have entered into a written retention agreement." (ER 35.) Little and Landau never executed a retainer agreement, Amber filed for bankruptcy protection in March 2013, and Little went elsewhere to find representation for those proceedings.

That was not, however, the end of Landau's involvement with the Amber bankruptcy: Post retained Landau in May 2013, but Little said nothing of it until November 2013, when he filed a motion to disqualify Post's and Amber's attorneys. (See ER 15, 67.) (Little appeals only the denial of his motion as to Landau.)

In his motion, Little argued that he shared with Landau a significant amount of confidential strategic

information about his position vis-à-vis Amber. (See ER 6–8.) Consequently, Little argued, even though Landau disclaimed an attorney–client relationship with him specifically, one nevertheless existed, and California Rule of Professional Conduct 3-310(E) therefore required Landau to obtain Little's informed written consent before undertaking his representation of Post.

Landau responded by attacking the sufficiency of Little's evidence that the two formed an attorney–client relationship, and posited instead that at most they had preliminary discussions about the possibility of Landau representing Little. (See ER 52–54.) Nothing disclosed in those discussions was confidential to Little, Landau argued, and as Little and Landau never agreed on Landau's fees, Landau explicitly disclaimed his representation of Little. Moreover, Landau observed, Little did not complain about his representation of Post until months after Landau undertook it. Little's contention that he was unaware until then of Landau's representation of Post rang hollow, Landau insisted: A few months before filing his motion, Little himself wrote to Landau regarding discovery in the case, and sent the letter to Landau at the same e-mail address by which they corresponded two years earlier. (See ER 71.) Indeed, Landau responded to the letter (see ER 85), and Little received and replied to that response (see ER 89–91).

The bankruptcy court was inclined to agree with Landau, and issued a tentative ruling: "Deny the Motion because Little has not satisfactorily shown that he is a former client of Landau's or that confidential information was disclosed during the initial consultation such that a fiduciary relationship was formed." (Ex. 1 to Appellee's ER.) After receiving the tentative ruling, the night before the bankruptcy court was to hold a hearing on the matter, Little sought to file a supplemental declaration from Helfer purporting to further bolster his case. The bankruptcy judge refused to review it, and declined Little's offer to present evidence supporting his position in camera. (ER 157–58.) The court then issued an order confirming its tentative ruling. (ER 174–75.) This appeal followed.

## II. LEGAL STANDARD

The bankruptcy court's decision to disqualify – or, in this case, not to disqualify – counsel is reviewed for an abuse of discretion. Cohn v. Rosenfeld, 733 F.2d 625, 631 (9th Cir. 1984). A bankruptcy court abuses its discretion if it fails to identify the correct legal rule to apply to the matter before it (a question reviewed de novo), or if it the applies that rule to the facts in a way that is illogical, implausible, or finds no support in inferences that can be drawn from those facts. In re Taylor, 599 F.3d 880, 887–88 (9th Cir. 2010) (citing

United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**III. DISCUSSION**

The California Rules of Professional Conduct require an attorney to seek the "informed written consent" of a former client before "accept[ing] employment adverse to the . . . former client where, by reason of representation of the . . . former client," the attorney "has obtained confidential information material to the employment." Cal. Rules of Prof'l Conduct 3-310(E). Failure to comply with this Rule normally results in the disqualification of counsel from representing the latter client in a proceeding adverse to the former. Flatt v. Super. Ct., 9 Cal. 4th 275, 283 (1994); see generally L.B.R. 2090-2(a) (subjecting attorneys appearing before the bankruptcy court to the standards of professional conduct applicable in the district court); L.R. 83-3.1.2 (adopting the standards of professional conduct required by members of the State Bar of California as the standards of professional conduct for the district court).

In this case, it is not clear – to say the least – that Little was ever Landau's client. If Little was Landau's client, then to decide whether to disqualify Landau, the bankruptcy court needed only decide whether

the matter Little consulted Landau about was substantially related to the matter in which Landau represents Post. Flatt, 9 Cal. 4th at 283. If so, the court could also have presumed that in the course of their relationship, Little gave Landau confidential information, and therefore the "disqualification of the attorney's representation of the second client," Post, would have been mandatory. Id.

Even if Little was not Landau's client, the two may have formed an attorney–client relationship, for Rule 3-310(E)'s purposes, if their discussions "proceed[ed] beyond initial or peripheral contacts." People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1148 (1999). Whether or not an attorney is officially retained, "[a]n attorney represents a client – for purposes of a conflict of interest analysis – when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result." Id.; see also Fiduciary Trust Int'l of Cal. v. Super. Ct., 218 Cal. App. 4th 465, 479 (2013) (observing that when the attorney and client's relationship was "peripheral or attenuated," a court will only presume the attorney received confidential information requiring disqualification if he was in a position where he likely would have acquired it.)

Little and Landau presented the bankruptcy court with two competing views of their relationship. In one (advanced by Little), the record suggests that Little shared confidential information with Landau such that Landau should be deemed to have represented Little – and therefore disqualified – notwithstanding that they never executed a retention agreement. See, e.g., In re Muscle Improvement, Inc., 437 B.R. 389, 395–97 (Bankr. C.D. Cal. 2010) (disqualifying a creditor's counsel, even though the debtors had not retained her officially, when the debtors previously met counsel, paid her a fee, provided her documents, and reviewed their financial condition with her). The other view (advanced by Landau), is of a record devoid of any such suggestion, and reflecting only initial or peripheral contact between the two, in the form of a get-to-know-you telephone conversation and a few spare e-mail messages.

The facts recounted above, depending partially on how one credits their sources, can support either Little's view, or Landau's. But making the choice between one or the other in the first instance was a task for the bankruptcy court, and it is not for this Court to substitute its judgment for the bankruptcy court's. See Cadillac Fairview/California, Inc. v. Dow Chem. Co., 299 F.3d 1019, 1026 (9th Cir. 2002) ("We could not substitute our judgment, even if it were different, because our

review is limited to whether the district court abused its discretion . . . ."). Instead, this Court is charged only with deciding whether the bankruptcy court's choice was out-of-bounds; that is, whether the choice of Landau's perspective over Little's, on the record before that court, was illogical, implausible, or unsupportable based on inferences drawn from facts in that record. The bankruptcy court's ruling suffers none of those faults, and therefore is affirmed.

The Court's review would end there, but for two other points of which the Court can dispose quickly. First, Little argues the bankruptcy court erred in declining to consider a late-filed declaration from Jeffrey Helfer, attached to a "supplemental reply," that would have cast the record in a better light for Little. The bankruptcy court's rules regulate the timely filing of replies, L.B.R. 9013-1(g), and a court's enforcement of its local rules is left to its broad discretion, Bias v. Moynihan, 508 F.3d 1212, 1223 (9th Cir. 2007). Moreover, as the bankruptcy court declined to consider the late-filed document, so does this Court, which reviews the bankruptcy court's ruling on the record that was before the bankruptcy court. (As this Court will not consider the late-filed document, anyway, it denies Post's Motion (Doc. No. 13) to strike it.) See, e.g., Smith v. U.S. Customs & Border Protection, 741 F.3d 1016, 1020 n.2 (9th

Cir. 2014) (declining to consider a claim "that rests on facts and documents that were never before the district court," and denying as moot a motion to strike those documents).

Second, Little argues the bankruptcy court should have allowed him to provide further evidence of his relationship with Landau in camera. Little provides no authority at all to support that argument, which is essentially just a request for an indulgence that, were it to be considered at all, would surely be left to the bankruptcy court's discretion. Cf. Rock River Commc'ns, Inc. v. Universal Music Group, Inc., 745 F.3d 343, 353 (9th Cir. 2013) ("[W]e review for abuse of discretion the district court's decision not to conduct an in camera review of the documents" to determine whether they are subject to the attorney-client privilege).

**IV. CONCLUSION**

The decision to disqualify an attorney is left to the bankruptcy court's discretion. On the record before that court, its decision not to disqualify Landau was not illogical, implausible, or unsupportable. It is, accordingly, AFFIRMED.

Dated: October 27, 2014

VIRGINIA A. PHILLIPS
United States District Judge